J-S75045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF:  A.N.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF:  A.F.C., MOTHER | No. 2309 EDA 2014 |

Appeal from the Decree entered July 8, 2014,
in the Court of Common Pleas of Monroe County,
Orphans' Court, at No(s): 2014-00016

BEFORE:    ALLEN, LAZARUS, and MUNDY, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED DECEMBER 08, 2014**

A.F.C. ("Mother") appeals from the decree involuntarily terminating her parental rights to her minor child, A.N.C. ("Child"), born in March of 2004, upon petition of J.D.C. ("Father") and A.C. ("Stepmother").    We affirm.

The trial court summarized the background of this case as follows:

The minor child was born on March [], 2004.   Her natural parents are [Mother] and Appellee, [Father].   [Mother] and [Father] were married, but divorced on November 12, 2008. [Father] then remarried [Stepmother] [].

[Father] testified [Mother] has had no contact with the minor child in the last eight years.  The child is now 10 years old. During the eight year period, [Mother] has not seen the minor child, nor spoken to her.  She has not sent the minor child any cards or gifts for her birthday or holidays.  The minor child and [Father] have had contact with [Mother's] mother ("maternal grandmother"), who resides in Palmerton, Carbon County, Pennsylvania.  [Father] did not know the current whereabouts of [Mother] at the time of filing the petition to terminate parental rights, nor at either hearing held in this matter on May 19, 2014 and July 7, 2014.  [Father] believed [Mother] was incarcerated.

At the time of the hearing held May 19, 2014, [Father] represented that he believed [Mother] had most recently been incarcerated in the Dauphin County (Pennsylvania) Correctional Facility. [Father] clocked into this file on March 26, 2014, a prison list of Dauphin County available on-line with [Mother's] name listed thereon (highlighted in green on the document contained in the docket). However, at the time of the May 19, 2014 hearing in this matter, [Father] testified that [Mother] was no longer at the Dauphin County Correctional Facility, her whereabouts were unknown, and he was unable to serve her prior to her release.

This Court ordered that the matter be continued to July 7, 2014, and authorized service by publication. An Order was entered on May 20, 2014 requiring service by publication one each time in The Times News, a newspaper of general circulation in Carbon County, Pennsylvania, and the Carbon County Legal Reporter, believed to be the legal publication of the Carbon County Bar Association. (It is actually the Carbon County Law Journal). [Father] believed Carbon County was the last known residence of [Mother] and [Mother's] mother resided in Carbon County.

At hearing held July 7, 2014, [Father] provided proof of publication in The Times News and in The Standard Speaker (published and circulated in the Hazleton, Pennsylvania area). The contents of the Notices published provided sufficient information as to the nature of the action and date and time for hearings. (See Petitioner's Exhibit 1). There was no proof of publication submitted for the Carbon County Legal Reporter (sic). The Court discussed with [Father] about serving [Mother] by advertising in a newspaper of general circulation in The Standard Speaker. (See N.T. July 7, 2014 p.p. 3-4 and 6-7). No other inquiry was made by the Court concerning service.

[Father] testified he did not hear anything from [Mother] following publication of notice on June 10, 2014. [Father] also advised [Mother's] mother in person of the intention to terminate [Mother's] parental rights with no objection from her. [Father] and the minor child have resided at the same address for the last eleven (11) years and [Mother] knows that address.

The testimony of [Father] and his wife, [Stepmother], confirmed [Stepmother's] intention to adopt the minor child. There was a close mother/daughter relationship, and it was

2

apparent there was a strong bond between the minor child and [Stepmother]. Based upon the lack of contact by [Mother] for the last eight years, it was shown by clear and convincing evidence that [Mother] exhibited a settled purpose of relinquishing her parental rights. There was a clear bond between the minor child and stepmother, and it was in her best interest to grant the termination of parental rights.

Trial Court Opinion, 8/26/14, at 1-3.

Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. Mother presents two issues for our review:

> 1. DID THE TRIAL COURT COMMIT AN ERROR OF LAW IN FINDING FATHER MADE SUFFICIENT AND EFFECTIVE SERVICE OF THE NOTICE OF THE TERMINATION HEARING ON MOTHER, THUS DEPRIVING HER OF DUE PROCESS?
>
> 2. DID THE TRIAL COURT ERR IN FINDING FATHER PROVED BY CLEAR AND CONVINCING EVIDENCE THAT MOTHER, BY CONDUCT OVER THE COURSE OF SEVERAL YEARS, EVIDENCED A SETTLED PURPOSE OF RELINQUISHING HER PARENTAL RIGHTS TO HER DAUGHTER AND FAILED OR REFUSED TO PERFORM HER PARENTAL DUTIES?

Mother's Brief at 4.

Our standard and scope of review is well-established:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).  "[O]ur standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record."  *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012).

In her first issue, Mother asserts that the service was "ineffective and insufficient to properly advise Mother that [Father and Stepmother] had filed a Petition to Terminate her rights and they were insufficient to ensure Mother's due process rights were met."  Mother's Brief at 10.

With regard to this issue, the trial court opined:

> As to service, while [Father and Stepmother] did not publish notice in the Carbon County Legal Reporter (sic) as ordered, they made service in The Times News as ordered and in The Standard Speaker, both newspapers with general circulation in the Carbon County area.  There was no evidence of any other known address for [Mother].  [Mother's] mother, who resided in Carbon County, Pennsylvania, was personally made aware of the petition and hearing in this matter.  We found at time of the hearing, that [Father and Stepmother] had sufficiently met the service requirements of the Adoption Act and Rules of Civil Procedure, even if not fully compliant with this Court's Order.

Trial Court Opinion, 8/26/14, at 4.

We agree with the trial court.  Section 2513(b) of the Adoption Act provides the disjunctive requirement that "at least ten days' notice shall be given to the parent … whose rights are to be terminated, by personal service or by registered mail to his or her last known address **or by such other means as the court may require**."  23 Pa.C.S.A. § 2513(b) (emphasis added).

4

Our review of the record reveals the following exchange at the May 19, 2014 hearing, between the trial court and Father and Stepmother regarding attempts to locate Mother:

THE COURT: But you have checked and [Mother] is no longer [at the Dauphin County Correctional Facility]?

FATHER: As of last week, we looked and we did not see her.

THE COURT: Now, did you mail a copy to her down in the jail once you found out she was there of the petition or the order?

STEPMOTHER: No. I thought that that was something that was going to happen with you guys. I thought that was on your end. I didn't realize we had to mail it to her.

THE COURT: How about publishing notification? Did you do that?

STEPMOTHER: See I also thought that was something else you guys did. I did not – nobody really had any information to give me when I went up there with all the paperwork.

THE COURT: No, I understand. It's difficult too when you are pro se and you don't always get all the answers, but also you don't always know what questions to ask. So no, actually in all these cases, whether pro se or represented by counsel, the parties have to arrange service.

\*\*\*

THE COURT: … If you locate her – now, I know she's no longer in Dauphin County Jail, if she had still been there, then my other suggestion would be that you also serve her there; either, you know, by certified mail that she has to sign for or somebody signs for her or you send

5

somebody down there personally to at least hand it in to the jail officials for them to give it to her. She's out. You probably have no idea where now, correct?

FATHER: No.

N.T., 5/19/14, at 5; 7. The trial court then entered an order continuing the hearing to July 7, 2014 "to effect service on [Mother]". Order, 5/20/14. The trial court's order stated:

> AND NOW, this 20th day of May, 2014, [Father and Stepmother] shall make service of the Order setting forth the time and date for a hearing on their Petition to Terminate Parental Rights of [Mother] by publication one time each in the Times News, a newspaper of general circulation in Carbon County, Pennsylvania, and the Carbon County Legal Reporter. [Father and Stepmother] shall bring proof of publication to the Court hearing to be held in this matter.

At the commencement of the July 7, 2014 hearing, the following exchange occurred:

THE COURT: … We continued this matter from last time to make sure that [Father and Stepmother] attempted service on [Mother] in this matter, correct?

FATHER: Correct.

THE COURT: Were you able to do that?

FATHER: Yes, we did.

THE COURT: Excellent. All right. If you bring that up to the court reporter, she will have it marked. (Petitioner's Exhibit No. 1 marked for evidence.) Okay. We note that Petitioner's Exhibit No. 1 collectively is proof of publication; one in the Times News, LLC and the other in the Standard Speaker.

6

N.T., 7/7/14, at 3.

The trial court concluded that Father and Stepmother had "sufficiently met the service requirements" of the trial court's order when they appeared at the July 7, 2014 hearing. *See* Trial Court Opinion, 8/26/14, at 4. Because 23 Pa.C.S.A. § 2513(b) provides for notice "by such means as the court may require", we find no abuse of discretion in the trial court's conclusion that Father and Stepmother met the service requirements by publication.

In her second issue, Mother claims that Father and Stepmother failed to establish clear and convincing evidence to support termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1). Mother's Brief at 20-27. The essence of Mother's argument is that "Father's testimony and evidence falls far short of the heavy burden on him." *Id*. at 23. We disagree.

Section 2511 of the Adoption Act, which sets forth grounds for involuntary termination, provides in pertinent part:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> *    *    *
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

7

23 Pa.C.S.A. § 2511(a)(1).  As the petitioners, Father and Stepmother had the burden of proving by clear and convincing evidence that Mother had evidenced a settled purpose of relinquishing her parental claim to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1).  **See, e.g., In re Adoption of W.J.R.**, 952 A.2d 680, 683 (Pa. Super. 2008).  Clear and convincing evidence is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."  **In re C.L.G.**, 956 A.2d 999, 1004 (Pa. Super. 2008).  Furthermore:

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.  Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**In re K.Z.S.**, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

Here, the trial court noted that it had "reviewed the record and [was] satisfied there was clear and convincing evidence to terminate [Mother's] parental rights as cited and discussed in the Discussion portion of the July 9, 2014 Decree."  Trial Court Opinion, 8/26/14, at 4.  We agree.

Father testified to being married to Stepmother for five years, and that Stepmother intended to adopt Child.  N.T., 7/7/14, at 5.  With regard to Mother, Father testified that Mother had not seen Child in eight years.  **Id.**  Likewise, Mother had not "contacted" Child – by telephone, "letter or card"

8

for eight years. *Id.* at 5-6. Father stated that although he and Child had resided at the same residence for the past eleven years, Mother had not seen Child for eight years because:

> [Mother] had just sort of become a convict more or less. She was running from the law and doing things that a parent should not be doing.

N.T., 7/7/14, at 9. Father averred that Mother would be able to find Father and Child if she wanted to, and Father "definitely" had not tried to hide from Mother in any way. *Id*. Father further testified that he "would love for" Stepmother to adopt Child, and that the two have an "excellent" relationship, treating one another as "mother and daughter." *Id.* at 8.

Stepmother testified that she "got along great" with Child and wished to adopt her. *Id.* at 10. Stepmother stated, "I feel like [Child] is one of my own." *Id.* With regard to Mother, Stepmother testified that she had "been here for five [years] and we have not heard from [Mother]." *Id.* at 12. When asked about any contact from Mother, Stepmother replied, "Absolutely nothing." *Id.*

Child testified that she would like Stepmother to adopt her. *Id.* at 13.

Based on the foregoing, there is competent evidence in the record to support the trial court's credibility and weight determinations, such that we find no abuse of the court's discretion in concluding that Father and Stepmother sustained their burden with regard to Section 2511(a)(1). *See e.g., In re Adoption of W.J.R., supra* (the trial court is free to believe all,

9

part, or none of the evidence presented in a termination of parental rights proceeding); *see also In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (if a parent is to avoid the involuntary termination of parental rights, it is incumbent upon the parent when separated from her child to maintain communication and association with the child, which requires an affirmative demonstration of parental devotion, imposing upon the parent the duty to exert herself, to take and maintain a place of importance in the child's life).

For the above reasons, we find no error in the trial court's exercise of its discretion, and affirm the decree terminating Mother's parental rights.

Decree affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2014